UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

IN RE:

ROBERTO V. GUTIERREZ

    Debtor,                                        NO. 07-05-10755 ML

LILLIAN DALE,

    Plaintiff,

vs.

ROBERTO V. GUTIERREZ,                         Adversary No. 05-1112 M

    Defendant.

## MEMORANDUM OPINION

THIS MATTER came before the Court on a trial of the merits of this adversary proceeding initiated by a Complaint Objecting to Discharge Pursuant to 11 U.S.C. Section 727 ("Complaint") filed on May 22, 2005 by Plaintiff Lillian Dale ("Dale"). In the Complaint Dale alleges that Debtor/Defendant Roberto V. Gutierrez ("Debtor") should be denied a Chapter 7 discharge under 11 U.S.C. § 727(a)(4)(A) on the grounds that the Debtor knowingly made the following false oaths: (1) the Debtor perjured himself on his bankruptcy schedules when he claimed he was unemployed; (2) the Debtor perjured himself at the creditor's meeting when he claimed that after re-employment he was earning a lower wage. The Court held a final hearing on June 7, 2006, and the Court took the matter under advisement.

After considering the testimony and the arguments of counsel, reviewing the documents

in the case file, and being otherwise fully informed, the Court makes the following findings of fact and conclusions of law.

## **FINDINGS OF FACT**

1. On or about January 6, 2005, the Debtor received a letter from the United States Postal Service ("USPS") notifying him that his employment would be terminated on February 9, 2005 ("Termination Letter").

2. Defendant appealed the pending removal through a grievance procedure.

3. The Debtor electronically filed a petition under Chapter 7 of the Bankruptcy Code on February 3, 2005.

4. In his bankruptcy schedules the Debtor reported that he was unemployed and that he did not have any income.

5. The Debtor included in Schedule B and Schedule C a contingent and unliquidated claim entitled "Lawsuit for Wrongful Discharge" that he valued at $10,000.

6. The Debtor testified that he is unsure of the actual date he reviewed and signed his petitions and schedules.

7. Pursuant to a grievance settlement, the Debtor was reinstated to his employment at the USPS on January 27, 2005.

8. The Debtor did not modify his schedules to reflect his reinstatement.

9. At the creditor's § 341 meeting on March 22, 2005, the Debtor testified that he had been reinstated at the USPS. He further testified that his wages were less than they had been because he was no longer working overtime.

10. After the Debtor was reinstated at the USPS, his route was reduced from ten hours five days a week to eight hours five days a week.

11. Dale is an unsecured creditor of the Debtor who is owed approximately $15,000.

12. On May 22, 2005, Dale filed a Complaint alleging that the Debtor had knowingly made a false oath on his schedule and when testifying at his 341 meeting and should be therefore denied a discharge under § 727(a)(4)(A).

## DISCUSSION

A debtor will be denied discharge under 11 U.S.C. § 727(a)(4)(A) if the creditor shows through a preponderance of the evidence that the debtor knowingly and fraudulently made an oath and that oath relates to a material fact. *Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1294 (10th. Cir. 1997). A false oath may consist of "(1) a false statement or omission in the debtor's schedules or (2) a false statement by the debtor at an examination during the course of the proceedings." 6 *Collier on Bankruptcy* ¶ 727.04[1][c] (Lawrence P. King ed., 15th ed. rev. 2004). It is not proper to deny discharge under this section if the debtor's false statement is due to mere mistake, inadvertence, honest error or mere inaccuracy. *Id.; Brown*, 108 F.3d at 1294 (citations omitted). "The subject matter of a false oath is 'material,' and thus sufficient to bar discharge if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the property." *Calder v. Calder (In re Calder)*, 907 F.2d 953, 955 (10th Cir. 1990) (citing *In re Chalik*, 748 F.2d 616, 618 (11th Cir. 1984). "[T]he Bankruptcy Code must be construed liberally in favor of the debtor and strictly against the creditor." *Brown*, 108 F.3d at 1292.

Dale asks this Court to deny the Debtor a discharge under § 727(a)(4)(A) based on the misrepresentation concerning his employment in his schedules and his alleged misrepresentations at the creditor's meeting. The Court will address each issue in turn.

Because the Debtor does not dispute that the information on his schedules about his

employment was inaccurate, the crux of the dispute is whether the oaths on the schedule were knowing and fraudulent and whether they related to a material fact. Dale argues that the oaths were knowing and fraudulent because by January 27, 2005 the Debtor knew that he had been reinstated; therefore, Debtor had to have known when the schedules were filed on February 3, 2005, they were inaccurate. Alternatively, she argues that even if the Debtor completed and signed the schedules prior to his reinstatement on January 27, 2005, the schedules were still inaccurate because the Debtor was technically still an employee at the USPS until the effective date of termination on February 9, 2005.

While this Court agrees that a Debtor should correct any mistakes in completed schedules, the fact alone that the Debtor did not amend his schedules accordingly does not support Dale's argument that the misinformation was knowing and fraudulent. Here, the Debtor did indicate on his schedules that he was in the midst of an employment dispute. He valued the lawsuit at $10,000 and recorded it in two places on his schedules. Moreover, at the § 341 meeting, when asked about the lawsuit, the Debtor testified truthfully that the lawsuit had been resolved and he had been reinstated. The misstatements on the schedule are the result of mere inadvertence or mistake.

Even if the misstatements were knowing and fraudulent, the burden is on the creditor under § 727(a)(4)(A) to show that the mistakes are material. Dale did not present this court with any such evidence. There is no evidence that the misstatement in the schedules affected the ultimate disposition of this case or prevented the Trustee from discovering the nature and extent of the Debtor's assets.

Next, Dale argues that the Debtor misrepresented his actual income at the 341 meeting and thereby prevented this Court and the Trustee from discovering the true extent of the Debtor's

assets. This argument focuses on the Debtor's testimony at the 341 meeting that on reinstatement his income had been reduced because his route had been reevaluated and all overtime for that route eliminated. Dale argues that this testimony was knowingly fraudulent, offering payment stubs from the final months of the year as evidence that ultimately, in 2005, the Debtor grossed approximately $55,050.58. These payment stubs indicate that the Debtor did work some overtime. The Debtor's misstatement was material, Dale contends, because the Debtor's estimated monthly expenses did not exceed his actual monthly net income, which is evidence of substantial abuse of the provisions of the Bankruptcy Code.

The test in § 727(a)(4)(A) does not focus on whether the oath is true in the future; it focuses on whether at the time the debtor made the oath the debtor made a knowing and fraudulent misrepresentation. At the § 341 meeting, the Debtor testified as follows:

> Q. But what are you doing and how much are you making
> A. Less, because I'm not getting overtime.
> Q. I don't know what you were making before. Just tell me what you're doing now and how much you make?
> . . . .
> A. 45, 47. I don't know. I really don't.
> Ms. Franco: What are you taking home?
> A. 900.
> Q. Every two weeks.
> A. Every two weeks.

An affidavit by the Las Cruces Carrier Annex supports the Debtor's testimony that at the time of his reinstatement his hours were reduced with a corresponding reduction in overtime. A payment stub from February 2005 indicates that at that time the Debtor's biweekly pay was $941.49. Moreover, at the § 341 meeting the Debtor testified that he did not know what his yearly income would be. Any inaccuracies are the result of inadvertence or mistake. There is no evidence to support Dale's contention that at the time the Debtor testified, his testimony was

knowingly fraudulent.

## Conclusion

For the foregoing reasons the Court concludes that the Debtor should not be denied discharge pursuant to 11 U.S.C. § 727(a)(4)(A). This opinion constitutes the Court's findings of facts and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure. An appropriate judgment will be entered.

_____
**MARK B. McFEELEY**
**UNITED STATES BANKRUPTCY JUDGE**

cc:

Trey "R" Arvizu III, Esq.
Attorney for Plaintiff
P.O. Box 1478
Las Cruces, NM 88004-1479

Robert L. Lovett, Esq.
Lovett Law Firm
Attorney for Defendant
1135 North Solano Drive
Las Cruces, NM 88001